## PROVO CITY v. JACOBSON et al., (STATE, Intervener).

No. 6774. Decided May 28, 1947. (181 P. 2d 213.)

See 30 C. J. S. Eminent Domain, Sec. 369; Title to beds of natural lakes or ponds, note, 23 A. L. R. 757. See, also, 25 Cal. Jur. 1046; 8 Am. Jur., 767.

For former opinion, see 111 Utah 39, 176 P. 2d 130.

*I. E. Brockbank* and *George W. Worthen,* both of Provo, for appellant.

*Judd, Ray, Quinney & Nebeker,* of Salt Lake City, *J. Rulon Morgan,* of Provo, and *R. Verne McCullough* and *Clifford L. Ashton,* City Judge, both of Salt Lake City, for respondent.

*Grover A. Giles,* Atty. Gen., and *Herbert Smart,* Asst. Atty. Gen., for intervener.

WADE, Justice.

In plaintiff's petition for rehearing they urge that this court erred in assuming that the lands east of the old shore line, which the trial court found runs on the west side of the lands claimed by the defendants from the old Provo Resort

to Will Peay's cabin, are all higher than that shore line, whereas the evidence establishes that this is not the case. We have rechecked the evidence and find that this contention is correct and some changes will therefore have to be made in our previous decision.

The three justices who concurred in the original prevailing opinion are now all of the members of the court who participated in that decision who are still members of the court, therefore they are the only ones who are participating in this decision. We still adhere to the law therein announced to the effect that the state owns the lake bed as it was at the time when Utah became a state; that the boundary line between its lands and the privately owned property is the high water mark as it is marked on the land, and that the finding of the trial court that there was a shore line marked on the land running from the old Provo Resort to Will Peay's cabin is supported by a preponderance of the evidence and is binding on the parties to this action.

The details of the facts which we overlooked were not pointed out in any of the previous briefs. The lands here claimed by the defendants constitute a strip of land about two and a half miles long, which varies in width with the meander of the shore line and at the widest point is about a mile wide. The shore line on the west side of this land runs generally in a northerly and southerly direction, and the southern part lies between Provo Bay on the east and the main body of Utah Lake on the west, and is bounded on the south by Provo Bay channel which runs from the Provo Bay to the main body of the lake. The shore line of the waters of Utah Lake joins the shore line of Provo Bay near the northeast corner of the lands which defendants claim and runs in a general northwesterly southeasterly direction. Although a part of these lands are higher than compromise elevation, which is 4488.95 feet above sea level, the meander line and the heavy contour lines drawn on the maps to represent compromise elevation run north and east of these lands and come in contact with them only for a

short distance in the neighborhood of the northeast corner. The reason for this is that when the water stands at compromise elevation the part of these lands which are above that elevation forms an island on the westerly side thereof which runs almost the entire length of the lands, and is completely surrounded by water. When the water recedes only a few inches the land at the northeast corner between the island and the mainland is uncovered and joins the mainland to what was previously an island, thus forming a peninsula. East of the south end of these lands lies the waters of Provo Bay; when those waters are as low as 4484 feet above sea level a very small part of the east side near the south end of these lands are covered. On the east side the slope is very gradual and a slight raise in the elevation causes much more of these lands to be inundated by water. The highest part of these lands is near the west shore and is above the 4492 feet above sea level contour line. The west shore recedes into the lake abruptly. According to the charts of the water levels of Utah Lake prior to statehood 4484 feet above sea level is about as low as the water ever went during that time, as it is evident that the high water mark was above that level and that some of the lands now claimed by defendants are below that mark.

Although the trial court found that there was an old shore line on the west side of this property where the high water mark at the time Utah became a state was marked on the land, it did not find the exact location of such mark nor its elevation above sea level. Since it is evident that some of the lands claimed by the defendants are below this high water mark, we must send the case back to have the trial court determine the exact location of that mark wherever the lands claimed by the defendants border on the Utah Lake or Provo Bay, and fix the boundary line between the property of the state and the defendants on that mark.

It is evident that on account of the very gradual slope of the lands on the east side of this tract, the high water mark was not so distinctly marked on the land on that side as it was on the west side and therefore its exact location will

be more difficult to determine. However, since the waters flow freely through Provo Bay channel from the main body of the lake into Provo Bay the waters on both sides of this land would always be at approximately the same level, and in places where the high water mark was not distinctly marked on the land the boundary line should be projected on the contour line at the same elevation as it was where the high water mark showed distinctly on the lands.

In the previous hearing much evidence was received as to the elevation and exact location of the high water mark on the land. A map, made by Charles DeMoisy, in 1893, showing the lands then claimed by Peay, the predecessor of all these defendants to the lands which they now claim, was received in evidence. This map was made for and used by Peay in the trial of a case then pending wherein Peay claimed damages against certain water users who put a dam in the Jordan River and held the waters of Utah Lake higher than they would have otherwise been and thereby flooded Peay's lands. DeMoisy made part of his map from the records then on file in the Utah County Recorder's office at that time, from conveyances of such lands to Peay. According to DeMoisy's testimony given at the trial of that case those lands shown on his map as belonging to Peay were the part of these lands now claimed by defendants above the contour line at the elevation of 4486.97 feet above sea level. All of these facts and circumstances surrounding these early claims which Peay made to this land should be taken into consideration by the court in determining the location and elevation of the high water mark around these lands, together with all the other competent evidence which the parties produce on that question. The fact that Peay was claiming the lands, at that early date above a certain elevation and did not claim below it definitely indicates where he considered the high water mark was at that time.

The former decision is therefore modified to conform with the views herein expressed and the case is remanded to the district court to take further evidence if the parties so desire on the issues herein discussed but not previously

determined. And from such evidence and the evidence already received the court shall fix and determine the exact location of the high water mark as it was on these lands at the time Utah became a state, and therefrom fix a boundary line between the state and these defendants on that high water mark, and quiet the title of the lands of the respective parties. Each party to pay his own costs.

McDONOUGH, C. J., and WOLFE, J., concur.

PRATT and LATIMER, JJ., not participating.