PROVO CITY v. JACOBSEN et al.

STATE v. JACOBSEN et al.

No. 7402.   Decided April 25, 1950.   (217 P. 2d 577.)

See 45 C. J., Navigable Waters, sec. 253.

*George W. Worthen,* Provo, for plaintiff and appellant.

*Ray, Quinney & Nebeker,* Salt Lake City, *J. Rulon Morgan,* Provo, *Paul H. Ray,* Salt Lake City, *R. Verne McCullough* Salt Lake City, *Clifford L. Ashton,* Salt Lake City, for W. M. Jacobsen and others.

*Clinton D. Vernon,* Atty. General, *Herbert F. Smart,* Gunnison, for the State.

WADE, Justice.

This is the second time that this case has been before this court. Provo City, plaintiff, and the State of Utah, Intervener, appeal from a judgment awarding to the various defendants the land on which the Provo City Airport has been built. For a more detailed statement, see *Provo City* v. *Jacobsen et al.* (*State Intervener*), 111 Utah 39, 176 P. 2d 130; on rehearing *Provo City* v. *Jacobsen,* 111 Utah 68, 181 P. 2d 213.

The lands in question are below the meander line of Utah lake, and the State of Utah claims to own them on the ground that they were a part of the bed of that lake on January 4, 1896, when Utah was admitted as a state. Provo City derives its claim from the State as a lessee. The defendants claim the lands as successors in interest of the original patentees of the quarter sections which adjoin these lands and are above the meander line of the lake. They claim that at the time Utah became a state, these lands were above the high water mark of Utah lake, and, therefore, passed to their predecessors as a result of the patents issued to them by the United States government.

In the first trial, the court found that the State and Provo City had failed to prove that these lands were below the high water mark at the time of statehood, and that since they had the burden of proving this fact, it awarded the lands to the defendants.

On appeal to this court, we affirmed that decision. We held that the state owned the bed of the lake up to the high water mark and that the defendants owned the land above that mark. That the high water mark was the mark on the land where valuable vegetation ceased to grow because the land was inundated by water for long periods of time. That there was evidence that at the time of statehood, there was a high water mark which ran in a general northerly and southerly direction from the old Provo City resort near the northwest corner of the lands in question to

Will Peay's cabin near the southwest corner thereof. The waters of the lake were to the west of this line and the land above was to the east. We affirmed the judgment of the trial court.

On rehearing the plaintiff argued that the court had overlooked a material point in the case which required a modification of the decree. Contending while it was true that there was evidence of a high water mark to the west of all of the ground in question, the Provo Bay channel ran from the main waters of the lake south of these grounds easterly into Provo Bay which widened out to the southeast of this ground and covered a part thereof.

We revised our original opinion and granted a retrial on this one question only and directed the trial court to take evidence as to the location of the high water mark to the south and east of this land. It was evident from the record before us at that time that the slope of the ground to the southeast of this land was very gradual and that no markings had been left showing the high water mark at that place. We held that if the elevation of the high water mark west of these grounds at the time of statehood could be determined, then it could be projected at that level around the southeast side of these lands and fixed at the same level on the other side as it occurred on the west side.

On retrial, the evidence showed that the old high water mark to the west of this ground has now been completely obliterated and its elevation cannot from any present markings on the ground be determined. The plaintiff produced a geologist who went to the shores of Utah Lake where the ground was stable and hard and located four markings of ancient water levels, and from that and some experimentations which he conducted, he concluded that the high water mark at the time of statehood was at 4488.95 feet above sea level which would be exactly at compromise level as that term was used in our previous opinions. He conceded that this mark had probably been made by the water

standing at that level for a period of thousands of years. He also recognized that it might not be the exact mark where vegetation would cease to grow at the time of statehood. We are of the opinion, after a study of this evidence, that it has little or no value in determining the elevation of the high water mark on this ground at the time Utah became a state.

If this mark, which the geologist located and which is the same as compromise level, was the high water mark at the time of statehood, then practically all of the lands in question were below the high water mark and belong to the State of Utah. If this were true, then this court in the original and rehearing opinions, as well as the trial court on the first trial, were mistaken in holding that this land was above the high water mark. This is very definitely indicated by our original opinion and our opinion on rehearing.

In the opinion on rehearing, we indicated that we thought it was probable that some of the lands in question were below the high water mark at the time of statehood. In expressing that idea, we used the term that it was "quite evident" that such was the fact. We also said in that opinion that the lands on the southeast side of this ground sloped very gradually and that a slight drop in the elevation of the water would uncover a large acreage of land. From that opinion it was evident that if the elevation of the high water mark was fixed low enough, all of this land would be above the high water mark. So what was meant by the language we used was that it was quite evident that some of the lands claimed by defendants might probably be below the high water mark.

On retrial, the defendants submitted their case without producing any further evidence. After the case was thoroughly argued, the trial court took the matter under advisement and later handed down its decision in a carefully considered memorandum in which it concluded that the

state had again failed to establish by a preponderance of the evidence that any of the lands in question were below the high water mark at the time of statehood, and concluded that since the plaintiffs have the burden of proof, they must fail. After this memorandum was handed down, the trial court allowed the parties to reargue these questions and again in a further memorandum reached the same conclusion and thereupon entered its findings of fact and judgment against the plaintiff.

We have carefully considered the new evidence in this case and the arguments of counsel on both sides, together with the memorandum of the court and the evidence in the original case, and have concluded that the decision of the trial court is correct since the State has failed to establish where the high water mark was, by the preponderance of the evidence. The judgment is therefore affirmed and respondents are awarded their costs on this appeal.

PRATT, C. J., and WOLFE, LATIMER and McDONOUGH, JJ., concur.