271 P.2d 462

FARRER et al. v. JOHNSON et al.

No. 8076.

Supreme Court of Utah.

June 10, 1954.

McCullough, Boyce & McCullough, Salt Lake City, for appellants.

George S. Ballif, Provo, for respondents.

COWLEY, District Judge.

Three cases consolidated for trial and on this appeal involving the same issues. Plaintiffs and appellants brought these cases to quiet title to certain so-called accretion land located in Utah County. Appellants also prayed in the alternative, that in the event title is not quieted in them, that they be granted a lien and fore-closure thereof, for purchase price paid for their tax deeds and payment of subsequent general taxes. Defendants and respondents by their answers denied appellants claim of title and counterclaimed praying that title to the three parcels of property be quieted in them. The trial court made and entered findings of fact, conclusions of law, and decree in each case in favor of respondents, quieting title in respondents to the lands in question. The trial court also denied appellants' claim for tax lien and foreclosure thereof. From these judgments appellants appeal. We shall here-after refer to appellants as plaintiffs and respondents as defendants.

Plaintiffs claim title to the disputed lands, by

1.  Tax titles in all three cases, and

2.  Record titles in addition to the tax titles in two of the cases.

Defendants deny,

1.  Validity of tax titles, and

2.  That plaintiffs' record titles in the two cases are barred by statute of limitations, Sections 78–12–5 and 6, U.C.A.1953.

Defendants claim title, by

1.  Adverse possession, and

2.  The accretion doctrine.

The lands involved in these cases are located west of Provo City, in Utah County. The property is bounded on the north by

the Utah Lake meander line and extends southward to the water's edge of Utah Lake. The meander line was fixed by the Federal Government in 1856, and all land between the meander line and the lake is popularly known as "accretion land," and became such as the water of Utah Lake receded.

In 1872 the United States of America conveyed by patent deed the farm property north of the meander line to one Simon P. Eggertsen. The south boundary of the patented land was the meander line. In 1873 Simon P. Eggertsen conveyed the uplands property to defendants' predecessors in interest by metes and bounds description and in doing so said description did not quite reach the meander line but left a narrow strip of land between the meander line and the south boundary of defendants' land. This narrow strip is still in the name of Simon P. Eggertsen.

In 1883 Eggertsen conveyed the accretion ground bounded on the north by the meander line and on the south by the lake to one George T. Peay, plaintiffs' predecessors in interest to the disputed land in two of the cases. It will be noted that the patent deed of 1872 did not cover the accretion ground so Eggertsen apparently claimed it under the accretion doctrine since it was land adjacent to his patented farm. Defendants and their predecessors have been in continuous possession of the patented land since 1873 and the disputed accretion land in question since about 1900.

Utah County assessed the accretion lands for the first time in 1914 and said lands have since said time been assessed in the name of the record owners. Plaintiffs purchased quitclaim deeds from Utah County on December 19, 1941, August 28, 1947, and December 29, 1947, covering the three parcels of accretion ground in the three cases respectively, and they paid the subsequent general taxes to the time of suit.

In two of the cases plaintiffs secured deeds from the record owners in addition to their tax titles.

First as to plaintiffs' tax titles. Plaintiffs' tax titles are fatally defective because the required auditor's affidavits were never attached to the pertinent assessment rolls as required by Section 59–8–7, U. C.A. 1953, Telonis v. Staley, 1943, 104 Utah 537, 144 P.2d 513, 514. The auditor's affidavit is a condition precedent to a valid tax deed based thereon. Jenkins v. Morgan, 1948, 113 Utah 534, 196 P.2d 871. In each of the cases at bar the County Treasurer testified for the defendants that he looked in the front and back of each assessment roll for the years 1930 through 1937, the pertinent years involved, and found no auditor's affidavits attached or any appearance of there ever having been any auditor's affidavits so attached. He further testified that the front and back of each assessment roll was the "usual" and "customary" place for such affidavits to be attached. He did not look page by page. Neither did plaintiffs cause said books to be examined page by

page. In the Jenkins v. Morgan case above we held that the law presumes that all officers intrusted with public records will perform their official duty by keeping them safely in their offices, and if a paper is not found where, if in existence, it ought to be deposited or recorded, the presumption arises that no such document ever existed. The testimony of the County Treasurer is sufficient to support a finding that the affidavits were not attached to the assessment rolls as required by law. We hold that the tax deeds are void. Plaintiffs rely solely on tax title in one of the three cases, which is District Court case number 16935. In this case plaintiffs have no right, title or interest in the parcel of land involved therein.

We shall next consider plaintiffs' record titles in the other two cases together with defendants' claim of title by adverse possession which applies the same in all three cases.

The original patentee, Simon P. Eggertsen, received his patent deed from the United States Government in 1872 for the uplands property north of the meander line and conveyed it out in 1873 to defendants' predecessors, then in 1883 Eggertsen conveyed the accretion ground south of the meander line to one George T. Peay. Plaintiffs deraign their record title from the heirs of Peay. The original patent deed to Eggertsen did not cover the accretion lands but apparently he claimed it under the accretion doctrine which we will discuss later in this decision but is not material in determining the validity of plaintiffs record titles.

The record reveals that defendants and their predecessors have been in continuous possession of the disputed accretion lands for fifty years or more, but have never paid the taxes. The taxes have always been levied and assessed against the plaintiffs and their predecessors in interest as record owners beginning in 1914 when first assessed.

Defendants contend that plaintiffs' record titles are barred by the statute of limitations, sections of our code, 78–12–5 and 6, U.C.A.1953, which requires a plaintiff and his predecessors to be seized or *possessed* of the property in question within seven years before the "commencement of the action" or "committing of the act" in respect to which such action is prosecuted. Plaintiffs and their predecessors have actually been out of possession for more than fifty years but they urge that possession in them should be presumed under section 78–12–7, U.C.A.1953. This section reads as follows:

"In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property shall be presumed to have been possessed thereof within the time required by law; and the occupation of the property by any other person shall be deemed to have been under and in subordination to the legal title, unless it appears

"that the property has been held and possessed adversely to such legal title for seven years before the commencement of the action."

Defendants through their predecessors in interest have been in continuous possession of the disputed property, fenced the same and made improvements thereon, for more than seven years prior to 1914 when taxes were first assessed. Under this situation defendants would not be subject to payment of taxes required under section 78–12–12, U.C.A.1953, when none were levied and assessed. Defendants' predecessors fulfilled all the other elements required by law to acquire title by adverse possession by the time taxes were first assessed to the record owners in 1914. We believe, therefore, that defendants' predecessors had acquired the fee title by adverse possession prior to the time the taxes were first levied and assessed even though they did not evidence their title by quieting title and recording decree. This fee title by adverse possession operated as a disseisin of plaintiffs' predecessors' title and possession under the Peay deed of 1883. We assume for the benefit of plaintiffs that Peay went into possession of the disputed lands under his 1883 deed. It will be noted that the presumption of possession statute set out verbatim above requires a *person to establish a legal title to the property* before *the occupation of the property by another is deemed to have been in subordination to the legal title.* Here plaintiffs' prima facie case of legal title established by introducing in evidence the deeds in question was overcome by defendants' proof of title by adverse possession, so plaintiffs failed to establish legal title.

Since defendants acquired the fee by adverse possession prior to 1914 to the disputed property by reason of the statute, possession since that time aside from proof is presumptively in the defendants, and not in the plaintiffs.

This court has heretofore held that, where no taxes are levied or assessed, adverse possession may be acquired without payment of taxes, Central Pacific Railway Company v. Tarpey, 51 Utah 107, 168 P. 554, 559, 1 A.L.R. 1319; to the same effect are Utah Copper Co. v. Chandler, 45 Utah 85, 142 P. 1119; and Home Owners' Loan Corp. v. Dudley, 105 Utah 208, 141 P.2d 160.

Plaintiffs' record titles in the two cases are barred by the statute of limitations, sections 78–12–5 and 6, U.C.A.1953, which are District Court cases numbered 16936 and 16937, and defendants are entitled to have title quieted in them as against these plaintiffs in all three cases.

Defendants' claim of title in the three cases under the general accretion doctrine, while not material to our decision, nevertheless, if applicable, inured to the benefit of the original patentee, who in turn conveyed it to plaintiffs' predecessors in interest in 1883. When the original patentee conveyed in parcels part of his patented

ground in 1873 he described the parcels by metes and bounds which descriptions did not quite reach the meander line, but even if said metes and bounds description had reached the meander line in order to be adjacent to the accretion ground there is some evidence in the record that Peay took possession of the accretion ground under his deed of 1883 which suggests that the original patentee retained possession of the disputed lands after executing his 1873 conveyances of the uplands property to defendants' predecessors in interest.

■■ Final question: Are plaintiffs entitled to a lien and foreclosure against said property for the purchase price paid for invalid tax deeds and subsequent general taxes paid, under section 59–10–65, U.C.A. 1953?

Section 59–10–65 provides as far as material as follows:

"Every person who has purchased * * * any invalid tax title to any real property in this state shall * * have a lien against such property for the recovery of the amount of the purchase price paid to the county therefor *to the extent that the county would have a lien* prior to the sale by the county, but in no event shall the lien be greater than the amount of taxes, interest, and penalties, or the amount actually paid whichever is smaller; provided however, taxes paid by the purchaser for subsequent years after the purchase from the county shall be included in the amount secured by said lien, which has not already been recovered. * * * and such lien shall bear interest at the legal rate for a period of not to exceed four years. Such lien shall be foreclosed in any action wherein the invalidity of such tax title is determined. * * *"

Plaintiffs are entitled to a tax lien and foreclosure thereof under the above section if the disputed lands were regularly assessed and subject to and not exempt from taxation.

Defendants contend and the lower court held that the lands in question were not subject to taxation because the lands in question were unpatented, unappropriated public domain and when Utah became a state in 1896 its inhabitants disclaimed all right, title, and interest in unappropriated public lands within its boundary. Constitution of Utah, Article III, Second, and therefore not subject to levy and assessment for taxes by Utah County; Section 59–2–1, U.C.A.1953.

In Provo City v. Jacobsen, 111 Utah 39, 176 P.2d 130; Id., 111 Utah 68, 181 P.2d 213; Id., 117 Utah 507, 217 P.2d 577, this Court held in effect that Utah State did not have any interest in lands above the high water mark of navigable waters, that is, the high water mark existing at the time statehood was granted. We further held in effect that defendants were the owners of the parcels of land they respectively claimed, that is, the lands between the pat-

196

ented lands immediately north of the meander line and the high water mark.

The land between the meander line on the north and the water's edge of Utah Lake on the south has been farmable through most of the years although during some seasons it is covered with water, but by the test applied in the Provo City case above, for fixing the high water mark, said high water mark is quite a distance south of the Utah Lake meander line and the property between is popularly known as accretion lands.

We quieted title in the many defendants in the Provo City case above, as against the State of Utah, whose claimed property was similarly located as the disputed property in the cases at bar.

We, therefore, conclude that such lands are subject to private ownership, and may be taxed.

No claim is made of any irregularity in the procedure of taxing the parcels in question, that would invalidate a tax lien in the taxing body so in these cases Utah County had a tax lien prior to sale which now is vested in the plaintiffs, and may be foreclosed.

Plaintiffs are entitled to a tax lien and foreclosure thereof for amount actually paid for tax deeds, plus subsequent general taxes paid and interest at the legal rate for the statutory period. Defendants are granted 60 days after final judgment is entered to discharge the tax liens.

The cases are affirmed in part, reversed in part, and remanded to the lower court to rewrite findings of fact, conclusions of law, and decree in accordance with this opinion.

Costs to defendants.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.

WOLFE, C. J., being disqualified, did not participate herein.