305 P.2d 507

Jessup THOMAS et al., Plaintiffs and Appellants,

v.

The HEIRS OF Mark P. BRAFFET and Hannah Braffet, both deceased; Robert I. Braffet and Mary Braffet, his wife; Maude White Waring, James H. Braffet, a single man, et al., Defendants and Respondents.

No. 8519.

Supreme Court of Utah.

Dec. 27, 1956.

George B. Stanley, Heber, for appellants.

Young, Young & Sorenson, Provo, for respondents.

CROCKETT, Justice.

This is an action to quiet title to 600 acres of desert land in Duchesne County.

All of the defendants in the action deraign their interest in the land from Mark P. Braffet, who acquired title in 1914. During his lifetime, Braffet made the following conveyances: to C. E. Miller, an undivided ⅙ interest; to Ernest Stenger, an undivided ⅙ interest; to John M. Zane, an undivided ⅙ interest; to Peter Barboglio, an undivided ¹⁄₂₄ interest; to R. J. Turner, an undivided ¹⁄₂₄ interest; to Lila Cramer, an undivided ¹⁄₂₄ interest; and to R. J. Sharp, an undivided ¹⁄₂₄ interest. The total interest conveyed by Braffet amounted to an undivided ⅔ of the property, leaving him with an undivided ⅓ interest in the land. Braffet's wife, Hannah J. Braffet, did not join in any of the above conveyances made by her husband.

In 1927, Braffet died leaving as his only heirs his widow, Hannah J. Braffet, two sons, Robert J. Braffet and James H. Braffet, and a daughter, Maude Braffet White, now Maude Braffet White Waring. All of these heirs of Mark P. Braffet, including his widow, filed written consents with the Clerk of the District Court of Carbon County, consenting to a partial distribution of the estate, and the court made a decree of distribution. Under this decree, the undivided ⅓ interest which Braffet had retained to this particular land in controversy was awarded to Maude Braffet White (Waring).

In 1945, Maude Braffet White (Waring) quitclaimed her interest to David G. Smith. The remainder of the defendants Helen B. Mott, W. H. Coltharp, and L. L. Pack are grantees of David G. Smith and Juanita C. Smith, his wife.

The plaintiffs derive their interests from a tax title. In 1929, a tax sale to Duchesne County took place and in 1936 an auditor's tax deed was executed. Duchesne County in 1945 quitclaimed to Jessup Thomas. The other plaintiffs, William H. Van Tassell and Orven J. Moon are grantees of Jessup Thomas and Irene Thomas, his wife.

All of the evidence in the case was either documentary or by stipulation. It was established that plaintiffs had not been in continuous and uninterrupted possession of the property for a period of seven years; that taxes for the years, 1944, 1945, 1947, 1948, 1949, 1950, 1952, 1953 and 1954 were paid by plaintiffs and for 1946 and 1951 were paid by defendant, David G. Smith; and that the auditor's affidavit required by law[1] was not affixed to the assessment roll for the year, 1929.

On May 22, 1946, a civil action, 2263, was commenced by two of the plaintiffs,

---

1. Utah Code Annotated, 59-8-7 (1953). This section was substantially similar in 1929 when the tax sale in the instant case took place. C.L.1917, § 6006.

William H. Van Tassell and Orven Moon, to quiet title to the property. Upon their request that action was dismissed by the trial judge on October 10, 1949.

On October 27, 1951, a second action, 2693, was commenced wherein the present plaintiffs sought to quiet title to the property. Defendants, David G. Smith, Juanita C. Smith, his wife, Helen B. Mott, L. L. Pack, Nora Pack, his wife, W. W. Coltharp and Oral Coltharp, his wife, filed an answer in the action. No other parties appeared, and plaintiffs again requested the court to dismiss the action, which was done June 16, 1952.

The instant case (the third one) was filed June 25, 1952. The Smith, Mott, Pack and Coltharp defendants again were the only ones to answer, which they filed on March 21, 1953 and asked that an undivided one-third interest in the land be quieted in them. On September 14, 1953 the court, upon the motion of the plaintiffs, entered an order dismissing the action as to all defendants who had not answered, and· this order expressly provided that the dismissal was without prejudice. On February 23, 1954, the administrator of the estate of John M. Zane (one of the defendants with respect to whom the action had been dismissed) intervened in the action, claiming an undivided one-sixth interest in the land.

The trial court found that the plaintiffs had no right, title or interest in the real property against the defendants, Smith, Mott, Pack, Coltharp and Zane. From this judgment plaintiffs appeal, making the following contentions:

A. That the failure to attach the auditor's affidavit to the assessment roll is not a fatal defect in the taxing procedure antecedent to sale.

B. That the defendants were barred by the statute of limitations from asserting rights in the property.

C. That the defendants did not establish that they were entitled to the interests awarded to them.

D. That the trial court erred in ruling that two prior dismissals acted as an adjudication on the merits and precluded plaintiffs from asserting their title against the Zane interests.

A. In Telonis v. Staley,[2] this court pointed out the importance of complying with the statute which requires the county auditor to deliver the corrected assessment roll to the county treasurer with his affidavit attached thereto. It was there stated that it would be unreasonable to suppose that the legislature intended that the assessment book be placed in the hands of the tax collector without any authentication whatsoever, and that failure to execute and at-

2. 104 Utah 537, 144 P.2d 513.

tach such affidavit is more than a mere "formality." Later cases have never wavered from this position, and it is now a firmly established rule of law in this jurisdiction that the absence of the auditor's affidavit is a fatal defect and would render void a tax sale upon which a tax deed is based.[3]

B. It is asserted, however, that even if the tax deed was defective, the statute of limitations bars the defendants from attacking the tax title. The applicable statutes provide as follows:

78–12–5.2 U.C.A. (Chapter 19, S.L.U. 1951). "No action or defense for the recovery or possession of real property or to quiet title or determine the ownership thereof shall be commenced or interposed against the holder of a tax title after the expiration of four years from the date of the sale, * * * and after the expiration of one year from the date of this act. * * *"

78–12–5.3. "The term 'tax title' * * * means any title to real property, whether valid or not, which has been derived through or is dependent upon any sale, * * * for the liquidation of any tax levied against such property. * * *"

It is the plaintiff's contention that since the above enactment went into effect on May 8, 1951,[4] and the instant case was not filed until June 25, 1952, the one year allowed after the effective date of the statute had run, and they are barred from asserting their defense.

As opposed to this, the defendants contend, and the trial court held, that the filing by the plaintiffs of civil action 2693 (the second action) and the filing of the answer by the defendants, Smith, Pack, Mott and Coltharp, in which they asserted their interest in the property and demanded that title be quieted in them, tolled the statute of limitations until the action was dismissed; and the filing of a similar answer by the same defendants in the instant action has tolled the statute since June 25, 1952.

Plaintiffs argue that tolling the statute is an affirmative defense and since it was not pleaded, must be deemed waived by the defendants; and urge further that the filing of the answer in the prior action claiming title to the property is not equivalent to the filing of an action and would not toll the statute in any event. Defendants insist, however, that since the action was later dismissed, not on its merits, the statute of

---

3. Equitable Life & Casualty Ins. Co. v. Schoewe, 105 Utah 569, 144 P.2d 526; Tree v. White, 110 Utah 233, 171 P.2d 398; Petterson v. Ogden City, 111 Utah 125, 176 P.2d 599; Jenkins v. Morgan, 113 Utah 534, 196 P.2d 871; Sperry v. Tolley, 114 Utah 303, 199 P.2d 542;

Valley Inv. Co. v. Los Angeles & Salt Lake R. Co., 119 Utah 169, 225 P.2d 722; Dowse v. Kammerman, Utah, 246 P. 2d 881; Farrer v. Johnson, 2 Utah 2d 189, 271 P.2d 462.

4. Laws of 1951, ch. 19.

62

limitations would be extended for one more year after the date of dismissal.

The latter contention is based on section 78–12–40, U.C.A.1953, which provides:

"If any action is commenced within due time and a judgment thereon for the plaintiff is reversed, or if the plaintiff fails in such action or upon a cause of action otherwise than upon the merits, and the time limited either by law or contract for commencing the same shall have expired, the plaintiff, * * may commence a new action within one year after the reversal or failure."

■ Plaintiffs maintain that this statute by its express terms extends the statute of limitations only to "plaintiffs," and that it cannot be invoked by defendants. We think, however, that the purpose behind the statute is plain and that the legislature intended that anyone who had a cause in litigation which was dismissed for some reason "otherwise than upon the merits" should have a reasonable time, which it set as one year, to reassert and attempt to establish his rights in court. There is no reason to believe that the legislature had any disposition to favor "plaintiffs" over any other class of litigants. We think that the word "plaintiff" as used in this section was meant to include not only the party who brings the action, but any party who affirmatively seeks relief, as did the defendants here, in this and the prior action.[5]

That this view is sound is suggested by a statement of this court in Welner v. Stearns.[6] In that case Welner brought an action to quiet title alleging that he was the owner of property by reason of adverse possession for more than seven years. The defense was that the seven-year period had been interrupted by the filing of a previous action. The court quieted title in Welner on the grounds that the defendant had not come into the prior action but stated:

" * * * No doubt, if, after inviting Almanda Stearns into court, she had appeared in the action, and had disputed appellant's title, the running of the statute, for the purpose of that action at least, would have been arrested."

■■ Yet another facet of the problem devolving upon the statute of limitations is the contention of the plaintiffs that the defendant's failure to affirmatively plead the tolling of the statute results in a waiver of

5. See e. g. Fox v. Pinson, 182 Ark. 936, 34 S.W.2d 459, 460, 74 A.L.R. 583 (defendant seeking affirmative relief by cross action was "plaintiff" within statute providing for voluntary dismissal of case) and In re Cool's Estate, 19 N.J.Misc. 236, 18 A.2d 714, 716 (plaintiff defined as a person asking any relief by any form of proceeding).

6. 40 Utah 185, 120 P. 490, 495.

that defense. It is no doubt true that Rule 8(c) requires a party to set forth his affirmative defenses and matters constituting an avoidance;[7] and that when the statute of limitations is pleaded, the reply plea (tolling of the statute) constitutes an avoidance.[8] It is also true that generally a failure to plead an affirmative defense results in its waiver and excludes it as an issue in the case.[9] However, the facts of this case present a somewhat unusual situation. Here it is the plaintiffs, as holders of a defective tax title, who are asserting the defense of the statute of limitations. They are in the same position as the plaintiff in the recent case of Hansen v. Morris.[10] In that case the holder of a tax title sought to quiet title and the defendant contended that since the limitation statute was not pleaded in the complaint it was waived. Justice Henriod pointed out that the statute of limitations generally must be pleaded, but stated that:

"＊ ＊ ＊ it is obvious that Rule 8 (c), in logic and good sense cannot hold a plaintiff seeking to assert a statute to knock out a *defense*, to the same strict accountability that it can a defendant seeking to knock out a *claim*." (Emphasis by the court.)

Thus in the instant case plaintiffs were not required and did not plead the statute of limitations in their complaint. However, when defendants answered to this complaint, they could not be required or expected to affirmatively plead to something which was not even raised. It has been held that a party stating a claim (in this case the defendants asserting title in their answer) is not required to anticipate the defense of the statute of limitations.[11]

After defendants asserted title in their answer, plaintiffs filed a reply and for the first time pleaded the statute of limitations. The Utah Rules provide that no responsive pleading shall be allowed to a reply,[12] and it is a general rule of law that where no responsive pleading is required, the party is entitled to prove further mat-

---

7. Rule 8(c) Utah Rules of Civil Procedure. "In pleading to a preceding pleading, a party shall set forth affirmatively ＊ ＊ statute of limitations, ＊ ＊ ＊ and any other matter constituting an avoidance or affirmative defense."

8. See annotation, 115 A.L.R. 755.

9. Rule 12(h) U.R.C.P. "A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply, except ＊ ＊ ＊ (lists exceptions)." See Whitmarsh v. Durastone Co., D.C.D.R.I., 122 F.Supp. 806; Roe v. Sears Roebuck & Co., 7 Cir., 132 F.2d 829; Moore's Federal Practice, § 12.23, note 3, p. 2328.

10. 3 Utah 2d 310, 283 P.2d 884, 886.

11. Alden-Rochelle, Inc., v. American Society of Composers. etc., D.C.S.D.N.Y., 3 F.R.D. 157; Barron & Holtzoff, Federal Practice & Procedure, § 281.

12. Rule 7(a) U.R.C.P.

ters of avoidance.[13] Therefore, it was proper to admit the evidence of the prior actions and defendants rightfully were allowed to show that the statute of limitations had been tolled.

C. Plaintiffs' argument that the evidence fails to support the finding and decree awarding the Smith, Pack, Mott and Coltharp defendants an undivided one-third interest in the property proceeds thus: That Mark P. Braffet during his lifetime conveyed away an undivided two-thirds interest in this property in which conveyance his wife, Hannah J. Braffet, did not join. Plaintiffs assume that the remaining one-third was reserved for the wife, and that it vested in her upon her husband's death; they reason further that any interest which defendants' grantor, the daughter, Maude Braffet White (Waring) acquired in this property, she took as an heir of her mother, and not of her father, Mark P. Braffet; and that she would thus take only one-third of the one-third, or an undivided one-ninth of the property, the other thirds going one each to her two brothers. By reason of the foregoing, plaintiffs contend that the Smiths and their grantees, who derive their interest from Maude Braffet White (Waring), are entitled at most to an undivided one-ninth interest in the property.

The above argument ignores the decree of distribution which was entered by the District Court of Carbon County in connection with the probate of Mark P. Braffet's estate. When Braffet died he left an estate having an appraised value of about $41,000. The value of the property here in controversy was appraised at $150. Property distributed to the widow was valued at $21,500. Hannah J. Braffet consented to the manner in which the property was distributed, and the land in dispute was awarded to the daughter, Maude Braffet White (Waring).

■■ It is evident that Hannah J. Braffet and her children entered into an agreement for the division of the property in the estate of Mark P. Braffet. It is a well established rule that the law looks with favor upon family settlements of intestates' estates and attempts to uphold such agreements where possible.[14] This principle is illustrated in the case of In re Howe's Estate[15] where the California court affirmed the proposition that: Stipulations concerning the amount to be considered community property and to determine the widow's share thereof, if not illegal or contrary to

13. Gulf Ref. Co. v. Fetschan, 6 Cir., 130 F.2d 129. See also annotation, 115 A.L.R. 758; Moore's Federal Practice, § 12.23, p. 2328; Barron & Holtzoff, Federal Practice & Procedure, § 370.

14. See annotations in 6 A.L.R. 555; 38 A.L.R. 759; 54 A.L.R. 976.

15. 88 Cal.App.2d 454, 199 P.2d 59.

policy, are not only approved by the law but the courts seek to sustain rather than overturn such compromise measures. The decree of the probate court cannot now be collaterally attacked by these plaintiffs.

 D. The final contention concerns the Zane interests only. The tolling of the statute of limitations by the filing of an answer as above discussed is not involved here because no one on behalf of Zane answered in the prior action as did the other defendants. It is contended, however, that Rule 41(a)(1) would cause the voluntary dismissal as to Zane to operate as an adjudication on the merits. That rule is:

"(a) Voluntary Dismissal: Effect Thereof.

"(1) By Plaintiff; By Stipulation. * * *, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any

court of the United States or of any state an action based on or including the same claim."

The trial court found that the dismissal by the court at the request of the plaintiffs on September 14, 1953 had the effect of an adjudication on the merits because of the dismissal of the prior action. Plaintiffs argue that this conclusion was in error because Rule 4(a)(1) only provides that a second dismissal by *notice* would operate as an adjudication on the merits, and that the rule should not apply where the request for dismissal was actually presented to the court and the court signed an order which recited that the dismissal was without prejudice as was done here.

This court has not heretofore interpreted that rule upon the point involved, but we find some assistance in federal adjudications thereon. In the case of Robertshaw-Fulton Controls Co. v. Noma Electric Corp.,[16] the question arose as to whether in the second notice of dismissal a recital that it was without prejudice had any effect. In deciding that it did not, the court said:

"We find no ambiguity in the words employed in Rule 41(a), * * *" and after quoting the language of the rule, further " * * * It is clear from this language that the plaintiff in the present case could not, by the mere

16. D.C.D.Md., 10 F.R.D. 32, 34.

recital in its notice of dismissal * * * that such notice is 'without prejudice and without costs,' defeat the express language of the Rule above quoted."

Plaintiffs aver, however, that the Robertshaw case is not necessarily against their position because it involved a notice of dismissal by the plaintiff and not by the court. As a practical matter, this would seem to make no difference because the usual practice in this State is to present an order of dismissal for the judge to sign, which he does as a matter of course where there has been no appearance on the other side. Whether the plaintiff proceeds by merely filing a notice of dismissal, or has the court sign an order, it is an ex parte dismissal without notice to the other side.

The purpose of Rule 41(a)(1) was to provide a simple and speedy method for a plaintiff to dismiss his action. Yet is was deemed necessary that there be a limitation upon this procedure in order to prevent vexatious suits and delays in litigation by repetitious filings and dismissals.[17] One may wonder how such dismissals could vex or annoy a defendant who had not appeared or whether the rule is good or bad in its overall effect. However, we are here concerned only with the rule as it is, and whether the two dismissals act as an adjudication and preclude further litigation. So long as it is extant a plaintiff should not be able, in a perfunctory dismissal, to escape its consequences by the simple device of including in the order a recital that the dismissal is without prejudice.

It should be noted that we are not here passing on what the effect would be if the adverse party had been given notice of the request for dismissal, by motion or otherwise, and the attention of the court had been directed specifically to that issue.[18] In the instant case, from aught that appears on the record, the prior dismissals were made in a perfunctory manner. The trial court correctly held that under the rule as it exists such dismissals operated as an adjudication against the plaintiffs upon the merits. Thus the Zane interests, which would otherwise be prevented from asserting their title because of the statute of limitations, also prevail against the plaintiffs.

Affirmed. Costs to defendants.

McDONOUGH, C. J., and WADE and WORTHEN, JJ., concur.

HENRIOD, J., concurs in the result.

17. Cleveland Trust Co. v. Osher & Reiss Inc., D.C.E.D.N.Y., 31 F.Supp. 985.

18. See Rule 41(a)(2) U.R.C.P.