State of UTAH, by and through its DIVISION OF FORESTRY, FIRE AND STATE LANDS, Plaintiff,

v.

UNITED STATES of America; Department of the Interior; Bureau of Reclamation; Eluid Martinez, in his official capacity as Commissioner; Bureau of Land Management; Sally Wisely, in her capacity as Utah State Director, BLM; Richard W. Davis; John Doe and Mary Doe; et al., Defendants.

No. 2:97CV927DAK.

United States District Court,
D. Utah,
Central Division.

Sept. 14, 2004.

Michael Goldsmith, Park City, UT, Pro se.

Philip C. Pugsley, Michael S. Johnson, J. Mark Ward, Utah Attorney General's Office, Salt Lake City, UT, for State of Utah.

W. Cullen Battle, Fabian & Clendenin, Salt Lake City, UT, Joro Walker, Western Resource Advocates, Salt Lake City, UT, for Utah Lake Users.

James E. Karkut, Department of Interior Office of Regional Solicitor, Salt Lake City, UT, Donna S. Fitzgerald, Lois J. Schiffer, Joshua E. Swift, U.S. Dept. of Justice, Environmental & Natural Resources Division, Washington, DC, Robert C. Fillerup, Orem, UT, for Defendants.

Phyllis Ensign, Salt Lake City, UT, Pro se.

Thor B. Cedarstrom, Pleasant Grove, UT, Pro se.

Mary B. Herbert, Provo, UT, Pro se.

M. Dale Jeffs, Jeffs & Jeffs, Provo, UT, for Clinger Family Partnership.

Jerald L. Cross, Orem, UT, Pro se.

Laurie Cross, Orem, UT, Pro se.

Robert H. Herbert, Provo, UT, Pro se.

Gray Lowery, Lehi, UT, Pro se.

Waldo Company, Orem, UT, Pro se.

Harbour Links Association, Mapleton, UT, Pro se.

Marlin E. Hall, Lake Shore, UT, Pro se.

J L.C., Leeds, UT, Pro se.

Evan Johnson, Mount Pleasant, UT, Pro se.

## MEMORANDUM DECISION AND ORDER DENYING CERTIFICATION TO STATE COURT

KIMBALL, District Judge.

This matter is before the court on Plaintiff–Intervenor's ("Utah Lake Users") Motion to Certify Questions of State Law. The parties have fully briefed the issue and the court concludes that a hearing will not significantly aid in its determination of the motion. After careful consideration of the parties' memoranda, as well as the facts and law relevant to the present motion, the court enters the following Memorandum Decision and Order.

### ANALYSIS

Plaintiff–Intervenors, known as the Utah Lake Users, filed this motion requesting the certification of two questions to the Utah Supreme Court under Rule 41(a) of the Utah Rules of Appellate Procedure. Under Rule 41(a) of the Utah Rules of Appellate Procedure, "the Utah Supreme Court may answer a question of Utah law certified to it by a court of the

United States when requested to do so by such certifying court ... if the state of the law of Utah applicable to a proceeding before the certifying court is uncertain." Utah R.App. P. 41(a). The questions the Utah Lake Users seek to have certified include:

1) If the high water mark at statehood cannot be ascertained, or if evidence of the statehood high water mark is otherwise unavailable or not part of the factual record, how should the boundary of sovereign lands be determined, what types of evidence are relevant to this inquiry and what is the burden of proof? For example, to what extent if any, is evidence of post-statehood use and possession relevant in determining the boundary of sovereign lands?

2) Has the Utah Supreme Court's adoption and interpretation of the public trust doctrine and the Utah Legislature's recognition of the unique public importance of sovereign lands since the *Jacobsen* cases changed the manner in which a determination of the boundary between sovereign state lands and private lands is made?

Pl.-Int Mem. Supp. Mot. To Certify Questions of State Law at 2.

■ The parties recognize that courts determining the issue often find certification appropriate "when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *State Farm Mut. Auto. Ins. Co. v. Pate,* 275 F.3d 666, 672 (7th Cir.2001).

■ First, the Utah Lake Users argue that the Utah Supreme Court should be given an opportunity to instruct this court on how the boundary of sovereign lands is determined if there is no evidence as to the high water mark at statehood. The Utah Lake Users specifically assert that the trio of *Jacobsen* cases from the Utah Supreme Court do not offer adequate instruction in this matter. *See Provo City v. Jacobsen,* 111 Utah 39, 176 P.2d 130 (1947), *Provo City v. Jacobson,* 111 Utah 68, 181 P.2d 213 (1947), *Provo City v. Jacobsen,* 117 Utah 507, 217 P.2d 577 (1950). This court disagrees.

On September 14, 2001, this court entered an order ruling on the State's Motion for Summary Judgment and the Defendants' (with the exception of the United States of America) cross motions for summary judgment. The State's Motion for Summary Judgment argued that because there was no evidence as to the visible ordinary high water mark ("OHWM") at statehood, this court should use the meander line as a default boundary. This court rejected the State's argument and concluded that the *Jacobsen* cases from the Utah Supreme Court were on point and governed the courts decision in this matter. Rather than merely acquiescing in the use of the meander line as a default boundary or fashioning its own test for determining the OHWM, this court recognized *Jacobsen* as the controlling Utah state law on this issue and strictly followed its dictates.

In *Jacobsen,* as in this case, there was no evidence of a visible OHWM, however, the court was charged with determining a boundary between the State and landowners. The *Jacobsen* court found that the evidence that had showed the "old high water mark" was completely obliterated and its elevation could not be determined from any present markings. 217 P.2d at 579. The court allowed the parties to put

on evidence from witnesses with a recollection from the time of statehood, evidence of water levels, historic maps, and expert testimony as to the location of the OHWM at statehood. 176 P.2d at 131–33, 181 P.2d at 214–15, 217 P.2d at 579. Because the Plaintiffs "failed to establish by a preponderance of the evidence that any of the lands in question were below the high water mark at the time of statehood, [the court] concluded ... they must fail." 217 P.2d at 579. Accordingly, the supreme court affirmed the trial court's rulings after both the first and second trials of the matter granting the lands to the landowner defendants. *Id.* at 578–79.

In this court's September 14, 2001 Order, it ruled that "[g]iven the State's failure to submit evidence to meet its burden of proving the location of the ordinary high water mark on the date of statehood and Defendants' evidence of historical uses on the lands in question below the meander line, this court finds that title should be and is quieted in the Defendants in possession of the land." September 14, 2001 Order at 7. Because only the Davis Defendants had submitted adequate evidence demonstrating the historic use and possession of their land, the court quieted title in them and directed the remaining landowner defendants to submit such evidence so that a proper boundary could be determined. After the September 14, 2001 Order, "all that was left to determine in this case was the specific boundaries of the land that had been historically possessed on the other parcels and the boundary of the Powell Slough area." January 2, 2003 Order at 9.

After the September 14, 2001 Order this court allowed the parties to appeal the legal determinations before proceeding with the factual determination of the prop-

er boundary for each parcel. However, no appeal was taken. Instead, the State sought to amend its Complaint in order to rely on other legal theories, and the court rejected the State's Motion to Amend. The State also, around this time, entered into a stipulation with the landowner defendants that the landowners need not put on any further evidence of historic use and possession in order to prove that the correct boundary was at the 4481 elevation ("4481 Stipulation"). The State then tried to have the 4481 Stipulation set aside. By entering such stipulation, the court found that the State had shifted the burden from the landowner defendants to itself to prove that the historic use and possession of the landowners' parcels was not at the 4481 level. The court made this ruling cognizant of the State's evidence of statehood water levels, pictures, and other relevant evidence submitted in its motion to set aside the stipulation. This type of evidence is consistent with the type of evidence relied upon by the *Jacobsen* court.

Nothing in this case is unchartered territory. The Utah Lake Users argue that the parties remain deeply divided as to the meaning of *Jacobsen* relative to resolving the dispute in this case and that this division supports certification. However, if this court were to certify every question of state law that opposing parties fail to agree upon, this court would be certifying every case before it that depended on state law. The parties have their own positions to advocate. The *Jacobsen* cases provide clear and adequate guidance, and this court has found no difficulty in following its instruction in its prior orders in this case. To the extent that the Utah Lake Users believe this court has fashioned its own test for determining the proper boundary, separate and apart from the dictates of *Jacobsen*, they fail to appreciate

the similarities between this case and *Jacobsen* and the fact that this court has repeatedly rejected the parties attempts to prove the correct boundary in any way other than that prescribed by *Jacobsen.*

In addition, the Utah Lake Users argument that this court denied the State an opportunity to prove the correct boundary is a misreading of prior orders. The State could have attempted to prove the OHWM at statehood in its initial Motion for Summary Judgment instead of asking this court to default to the meander line. After this court's September 14, 2001 Order, the State could have put on evidence to rebut the landowner's evidence as to historic use and possession. Instead, it chose to enter into a stipulation with the landowner defendants. However, even after the State entered into the 4481 Stipulation with the landowners, the court continued to allow the State to submit evidence that may rebut historic use and possession at the 4481 elevation and, therefore, demonstrate the correct boundary at statehood.

As in *Jacobsen,* none of the parties contend that there is evidence to prove a visible OHWM at statehood around Utah Lake. Therefore, *Jacobsen* teaches that other evidence as to use and possession at the time of statehood should be examined and considered in determining the correct boundary. The current record before the court demonstrates that there is evidence relevant to this determination.[1] There is no distinction in this court's view between the *Jacobsen* court's use of the term high

water mark and this court's use of the term boundary. Neither case deals with evidence of a visible high water mark, only the location of the high water mark at statehood, or, in other words, the appropriate boundary at statehood. Because of the similarities between this case and *Jacobsen* and the guidance provided by *Jacobsen* to the present dispute, the court concludes that there is no need to certify the Utah Lake Users' first question to the Utah Supreme Court.

■ Next, the Utah Lake Users ask this court to certify to the Utah Supreme Court the question of whether Utah's adoption of the Public Trust Doctrine would alter the applicability of the *Jacobsen* decisions to the boundary determination in this case. Although the Utah Lake Users contend that the Public Trust Doctrine was adopted by case law and statute after *Jacobsen,* it is clear from the dissenting opinion in *Jacobsen,* that the Public Trust Doctrine was recognized under Utah law at the time of that decision. The dissenting justice recognized that the state was the "owner as trustee for the people of the state of all lands under navigable lakes and streams" and that the issue was "what constitutes the boundary line between these lands held in trust on the one side and land of the public domain or privately owned lands on the other." *Jacobsen,* 176 P.2d at 134. Therefore, the *Jacobsen* court was well aware of the role of the Public Trust Doctrine and its place in the determination of the boundary. There is

---

1. In briefing this issue, the parties disagree with each other as to whether this court is seeking evidence of use and possession at the time of statehood or current use and possession. As a matter of clarification, when this court has referred to use and possession in terms of "historic" use and possession, it has been a reference to evidence at the time of statehood. It is statehood era evidence that the *Jacobsen* court relied upon in makings its determination. Evidence from the time of statehood is the relevant evidence for determining what lands passed to the State under the equal footing doctrine when it became a state.

no evidence that there has been a change in Utah law with respect to the Public Trust Doctrine which would call into question the precedential value of the *Jacobsen* cases.

The *Jacobsen* court's understanding of the issue presented also demonstrates a fundamental misunderstanding on the part of the Utah Lake Users as to the relevancy of the Public Trust Doctrine in this case. The Utah Lake Users' argument that this issue should be certified fails to recognize that the determination of the proper boundary is a determination of what lands passed to the state at statehood. Until this court determines what lands passed to the State at statehood, the Public Trust Doctrine is not implicated. Although this court has warned the parties not to conduct certain activities upon the disputed land until the proper boundary is decided, such warning was based on the fact that the disputed lands are potentially sovereign lands. This court cannot merely assume that the disputed lands are sovereign lands held in public trust until it determines the proper boundary between the State and the landowners.

The court agrees with the arguments of the State that if the court were to award property to the defendants based on current use and possession, the Public Trust Doctrine could be implicated because it could raise issues such as adverse possession and would, in essence, fail to determine what lands passed to the state at the time of statehood. However, this court has consistently focused on the boundary at the time of statehood and has already ruled that public land cannot be adversely possessed.

Because the law regarding the Public Trust Doctrine has existed in the State of Utah since before the *Jacobsen* cases and has not changed in any significant manner since that time coupled with the fact that the Public Trust Doctrine is not significantly implicated until this court determines what lands passed to the State at statehood, the court denies the Utah Lake Users' motion to certify the second question to the Utah Supreme Court.

■ As a final matter, the court notes that the Utah Lake Users' motion is also untimely. The proper time for this motion would have been at the time the court was considering the parties' motions for summary judgment in 2001 or shortly thereafter. That the Utah Lake Users did not intervene in this action until the State entered into the 4481 Stipulation with the Landowner Defendants does not excuse the untimeliness of this motion. The Utah Lake Users could have intervened in this matter from the outset but chose not to do so. The court has no legal issues pending before it. The court made its legal ruling on these issues in September 2001 and allowed the parties an opportunity to appeal that decision. Since the court's ruling in September 2001 resolving the legal issues in this case, the only issue remaining in this case has been a fact determination of the proper boundary for each of the remaining disputed parcels based on the landowner's historic use and possession of the land. Although the State may have delayed this determination by attempting to amend its Complaint and attempting to set aside a stipulation it entered into, the legal conclusions issued by this court have not changed. In the best interest of all the parties to this action, the parties need to proceed with the factual determination of the proper boundary for each of the remaining disputed parcels so that the uncertainties surrounding these properties can be resolved.

## CONCLUSION

Based on the above reasoning, the Plaintiff–Intervenor's Motion to Certify Questions of State Law is DENIED.