FILED
United States Court of Appeals
Tenth Circuit

June 4, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

STATE OF UTAH, by and through its
Division of Forestry, Fire & State
Lands,

    Plaintiff-Appellee,

UTAH LAKE USERS; NATIONAL
AUDOBON SOCIETY; GREAT SALT
LAKE AUDUBON, UTAH COUNCIL
OF TROUT UNLIMITED; SAM
RUSHFORTH; GLENN FOREMAN,

    Plaintiffs-Intervenors-
    Appellees,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF THE INTERIOR,
BLM; UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION;
ELUID MARTINEZ, in his official
capacity as Commissioner; U.S.
ARMY CORP OF ENGINEERS;
BROOKS CARTER, in his official
capacity as Chief, Utah Regulatory
Office; RICHARD W. DAVIS; COL.
DOROTHY F. KLASSE, in her
official capacity as District Engineer;
CAROL M. LEE; CAROL J. LEE;
ALTON M. LEE; A. MAUGHN LEE;
DON F. ENSIGN; JOHN M. HAILES,
PAULINE P. HAILES; SUSAN L.
BASTIAN, DICK E. BASTIAN,

No. 06-4062
(D.C. No. 2:97-CV-927-DAK)

HAVERGAL GREEN, a Limited Partnership; PHYLLIS ENSIGN; DONNA C. JACOBSON; PHILLIP R. GREEN; RODGER D. GRANGE; RHONDA L. GRANGE; CHARLES GARNER; ALMA L. EARL; ROBERT C. BEVERLY; CAROL BEVERLY; NATHAN B. JOHNSON; DONNA S. JOHNSON; JOANN G. JONES; REVA SMITH; A. DOYLE SMITH; COLLEEN P. OHRAN; VENICE C. GAMMON, Trustee of the Venice C. Gammon Revocable Trust; J. RULON GAMMON, Trustee of the J. Rulon Gammon Revocable Trust; PAULINE G. PUGH; FOWERS FRUIT RANCH; MARY B. HERBERT; JAMES S. EVANS; FLOYD H. EVANS; PEGGY F. BISHOP; LISA DOMBROSKY; DANIEL R. BISHOP; CAROLYN EVERETT; ROY B. MONK, Trustee of the Monk Family Trust; WILLIAMSON FARMS; KINGSBURY WILDLIFE FARMS; THE GREAT STOCK COMPANY OF VAST INTERNATIONAL IMPORT; JERALD L. CROSS; LAURIE CROSS; BETH W. CLEGG; ROBERT H. HERBERT; GRAY LOWERY; MAC CARTER; NANCY CARTER; GAYLEN W. BROWN; NORMA S. SMITH; WALDO COMPANY; WHITE EAGLE FARMS; VALUM AND VATAVAL; HARBOUR LINKS ASSOCIATION; KEITH Y. BARNEY; ISABELLE J. BARNEY; GENEVA STEEL; STEVE BUNKER; ALLEN C. CHRISTENSEN; WAYNE A. CHRISTENSEN; DARREL L.

-2-

CLEGG; DARREL LEWIS CLEGG; ALLEN C. COX; CRANDALL PROPERTIES; DURRANT, WINNIFRED H. FAMILY LIMITED PARTNERSHIP; DONALD P. ENSIGN; SUSAN S. EVANS; MERLENE S. EVANS, DON GREEN; HOWARD F. HATCH; GEORGE M. HINCKLEY; NITA J. HINCKLEY; DANIEL MILTON HOLDAWAY; KEITH R. HOLDWAY; JONI V. HOLDAWAY; J L.C., a Utah Limited Liability Company; ROBERT G. JACOBSON; EDWARD D. JOHNSON; WANDA L. JOHNSON; EVAN JOHNSON; DORTHY H. SCOTT; VERLON TERRY SCOTT; LEONARD C. SIMPSON; SWANNY L. SIMPSON; ERSEL O. STEELE; E. LEON STUBBS; BONNIE J. STUBBS; PETER S. ULUAVE; SHERYL D. ULUAVE; DAN R. WILLIAMS; KAREN W. WILLIAMS; DEAN S. WILLIES; LEATRICE M. WILLIES; CLAUDIA WRIGHT; DAVID WRIGHT; JANET B. YOUD, DIXIE B. FENN; BEVERLY D. DAVIS; B. NIEL CHRISTENSEN, Landowner; BETH HOLDWAY, Landowner; FEDERAL DFTS., Federal Dfts. consists of USA, DOI/BLM, RECLAM, Eluid Martinez, US Army Corp of Eng(T), Dorothy F. Klasse(T), Brooks Carter(T), and Sally Wisely; LANDOWNER DFTS;

SALLY E. WISELY, Utah State
Director of the Bureau of Land
Management, DOI,

      Defendants,
and

CLINGER FAMILY PARTNERSHIP,

      Defendant - Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH
(D.C. No. CIV 2:97-CV-927-DAK)**

---

M. Dayle Jeffs, Jeffs & Jeffs, P.C., Provo, Utah, for the Defendant-Appellant
Clinger Family Partnership.

Michael S. Johnson, Assistant Utah Attorney General (J. Mark Ward, Assistant
Utah Attorney General, and Mark L. Shurtleff, Utah Attorney General, with him
on the brief), Salt Lake City, Utah, for the Plaintiff-Appellee the State of Utah by
and through its Division of Forestry, Fire, and State Lands.

W. Cullen Battle, Fabian & Clendenin, Salt Lake City, Utah, and Joro Walker,
Western Resource Advocates, Salt Lake City, Utah, for Plaintiffs-Intervenors-
Appellees National Audubon, et al.

---

Before **HENRY**, Chief Judge, and **KELLY** and **LUCERO,** Circuit Judges.

---

**HENRY,** Chief Judge.

---

-4-

The State of Utah, by and through its Division of Forestry, Fire, and State Lands (Utah), filed this quiet title action against the United States and private landowners pursuant to the Federal Quiet Title Act, 28 U.S.C. § 2409(a), and state law. Utah asserted title to the lakebed of Utah Lake, a navigable body of freshwater west of Provo that covers 150 square miles. See Utah Div. of State Lands v. United States, 482 U.S. 193, 198 (1987). Utah based its claims upon the equal footing doctrine, under which the State automatically acquired ownership of the lakebed on January 4, 1896, when it entered the union. See id. at 195-96. It asserted that it owned the land up to the lake's ordinary high water mark at statehood–"the level where the body of water would normally stand during high water period, when not affected by floods and draught and free from all other disturbing causes." Provo City v. Jacobsen, 176 P.2d 130, 136 (Utah 1947) (Larson, C.J., dissenting).

This appeal involves Utah's claim against one of the private landowners: the Clinger Family Partnership (the Clingers). The Clingers own approximately sixty-three acres on the east side of Utah Lake, in an area known as the Powell Slough. They trace their title to a patent issued by the United States to James Clinger in 1881.

In the early stages of this litigation, Utah and the Clingers reached an agreed resolution of their boundary dispute: they filed a joint motion to quiet title in the

Clingers and against Utah down to an elevation of 4,481 feet above sea level. In a judgment entered in November 2002, the district court granted the parties' request, quieting title to the parcel described by the parties "and to the property lakeward to an elevation of 4,481 [mean sea level] against all claims the State has in its sovereign capacity or could bring as against [the Clingers] at this time." Aplt's App. vol. II, at 583-84. However, Utah subsequently filed a motion under Rule 60(b) of the Federal Rules of Civil Procedure to set aside the judgment, reasoning that state land officials had not approved the decision to agree to quieting title to the Clingers down to the 4,481-foot elevation.

The district court granted Utah's Rule 60(b) motion and then entered summary judgment in favor of Utah on its claim against the Clingers. The court concluded that the Clingers did not have title to lake-abutting land because the United States owned parcels between the Clingers' parcel and Utah Lake at the time the Clingers' predecessors first acquired the patent. Therefore, the court said, only the United States' un-patented lands were subject to Utah's claim to sovereign lakebed lands.

In this appeal, the Clingers argue that (a) Utah lacked standing to pursue its claims against them; (b) the district court abused its discretion in vacating the stipulated judgment in favor of the Clingers; (c) the district court erred in ruling on the Clingers' lack of title to the disputed property because that issue was never

-6-

pled in the litigation; and (d) the district court also erred in interpreting the Color of Title Act, 43 U.S.C. § 1068. We are not persuaded by these arguments, and we therefore affirm the district court's grant of summary judgment to Utah on its claim against the Clingers.

## I. BACKGROUND

### A. The Parties' Claims

The relevant facts are not disputed. Utah filed this action in 1997 against the United States and an individual landowner, Richard Davis. In 1999, Utah amended its complaint to add approximately two hundred individual landowners, including the Clingers. In both complaints, Utah requested the district court to determine the boundary between the lakebed of Utah Lake (which it owned as a sovereign under the equal footing doctrine) and the adjoining properties. The Clingers contested Utah's claim, based on "[their] title to the property and [their] possessory use of the same for in excess of one hundred twenty five years." Aplt's App. vol. I, at 264 (Answer to Amended Complaint and Counterclaim). The Clingers alleged that Utah had encroached on their property, and they sought a decree quieting their title and enjoining any further encroachment.

In support of their positions, Utah and the Clingers advanced conflicting accounts of the lakebed boundary in the Powell Slough. Both parties invoked United States Geological Survey (USGS) determinations in 1856 and 1874. In those years, the USGS established two meander lines–"the mean high-water elevation [] segregating the land covered by navigable waters from land available for public sale and settlement." Utah Div. of State Lands, 482 U.S. at 205. The first of these meander lines (established in 1856) was above the second (established in 1874).

In the part of the Powell Slough at issue in this appeal, the 1856 meander line ran from the northwest to the southeast through the northeast quarter of Section 29, Township 6, South Range 2 East. The 1856 survey produced sub-40 acre parcels immediately adjacent to and eastward of the meander line. Those parcels included lots 1 and 2, which were subsequently acquired by the Clingers. Lots 1 and 2 did not extend below the 1856 meander line, and none of the land west (or lakeward) of the 1856 meander line was surveyed, subdivided, or opened for entry pursuant to the 1856 survey.

Following the 1874 survey and the identification of a lower meander line, the USGS established Lots 3, 4, and 5 below the 1856 meander line. Those lots appear in the 1875 United States Government Land Office Plat, and they block the

lake frontage that lots 1 and 2 had in the 1856 plat.  Lots 3, 4, and 5 have not been patented by the federal government.[1]

In its complaint and its amended complaint, Utah asserted that the upper (1856) meander line was the best documentary evidence of the ordinary high water mark at statehood, and that, as a result, the 1856 meander line should determine the boundary of the lake.  Under that theory, neither the United States nor the private landowner defendants would have any right to property below that line.

In response, the Clingers asserted title to lots 1 and 2 in section 29 pursuant to a patent first issued by the United States to James Clinger on November 15, 1881.  Even though, in the 1875 plat, lots 1 and 2 did not extend below the 1856 meander line, the Clingers argued that they owned property below the 1856 meander line because they and their predecessors had "possessed, used, [and] farmed under claim of right and under color of title between the [upper] 1856 and [lower] 1874 meander lines" and because they had also paid taxes on part of the land between the meander lines.  The Clingers also invoked deeds transferring the property after 1887, all of which stated that they conveyed property "lakeward from the deeded ground to the waters' edge of Utah Lake."  Aplt's App. vol. III, at 997 (affidavit of licensed abstractor William M. Hall).  The district court resolved the dispute in a series of rulings between 2001 and 2005.

_____

[1]  A map of the disputed area, part of a Department of Interior Survey, is attached as Exhibit A.  See Aplt's App. vol. III, at 999.

## B. The District Court's September 2001 Decision Quieting Title in Landowners in Possession of the Land

First, in a September 2001 decision, the court rejected Utah's contention that the 1856 meander line should be deemed the ordinary high water mark as of 1896 (the time of statehood). The court reasoned that the actual ordinary high water mark as of 1896 had been obliterated and that the reasons offered by Utah for defaulting to the 1856 meander line were not persuasive. Therefore, the district court adopted the approach of the Utah Supreme Court in the Provo City cases (Provo City v. Jacobsen, 176 P.2d 130 (Utah 1947); Provo City v. Jacobsen, 181 P.2d 213 (Utah 1947); and Provo City v. Jacobsen, 217 P.2d 577, 578- 79 (Utah 1950)). In those cases, the Utah Supreme Court held that the state had the burden of proving the location of the ordinary high water mark at statehood. The court found that the State had failed to establish that location, and it then quieted title in favor of landowners who could offer evidence of historical title, use, and possession at the time of statehood.

In the instant case, the district court followed that approach. It stated: "[g]iven [Utah's] failure to submit evidence to meet its burden of proving the ordinary high water mark on the date of statehood and [the individual landowner's] evidence of historical uses on the lands in question below the meander line, this court finds that title should be and is quieted in the Defendants in possession of the land." Aplt's App. vol. I, at 355.

In denying Utah's motion to reconsider this initial ruling, the district court explained that its decision had not determined which particular landowners possessed land adjoining the lake. It observed that "[a]ll of the defendant[] [landowners] will need to establish their title, usage, and possession of the land in order for boundaries to be set." Aplt's App. vol. II, at 409. The court later clarified that this initial ruling did not apply to land in the Powell Slough.

C. The 4,481 Stipulation and the Judgment in Favor of the Clingers

After the district court adopted the approach of the Provo City cases, the United States assigned to Utah any interest that it possessed in land between the bed of the Utah Lake and the private defendants' property, but it excluded from this assignment the land in the Powell Slough. Then, in July 2002, Utah entered into a stipulation with the private landowners, including the Clingers. It provided a guideline for determining to what extent the private landowners had used the disputed land, stating that:

> [t]he Defendants, and each of them, their heirs and assigns, and Plaintiff the State of Utah, stipulate that from the time of the original federal patent under which their predecessors-in-interest claim title, they and their predecessors-in-interest have used that land lakeward from the federally surveyed meander line to an elevation no higher than 4481 feet above sea level continuously, except as such times as water levels have interfered with their historic use. The Defendants need put on no further evidence to support their claim of use of the land between the meander [line] and 4481 feet above sea level to support a finding by the court that at all relevant times the ordinary high water mark on Utah Lake was no higher than 4481 feet above sea level.

Aplt's App. vol. II, at 665.

-11-

Relying on this "4,481 Stipulation," Utah and the Clingers filed a joint motion to quiet title in the Clingers and to settle the boundary dispute. On November 20, 2002, the district court granted the parties' request and entered a judgment stating that "title to the property described . . . is quieted in the [Clingers] and to the property lakeward to an elevation of 4,481 MSL against all claims that the State has in its sovereign capacity or could bring as against this Defendant at this time." Aplt's App. vol. II, at 675-76.

### D. Utah's Fed. R. Civ. P. 60(b) Motion

On July 7, 2003, Utah moved pursuant to Federal Rule of Civil Procedure 60(b) to set aside the 4,481 Stipulation and the judgment quieting title in the Clingers. Utah explained that when its counsel entered into the 4,481 Stipulation, state land officials had not understood that the assignment of claims or interests from the United States had not included lands in the Powell Slough. To their surprise, "the *limited* extent of the federal assignment of claims that *excluded* the Powell Slough, combined with the *unlimited* extent of the 4481 stipulation that *included* the lakebed below the Powell Slough, meant the State could not stop Powell Slough area defendants from quieting title down to the 4481 level, thanks to the 4481 Stipulation." Aplt's App. vol. II, at 623.

In light of the land officials' lack of knowledge, Utah maintained, its former counsel (an Assistant Attorney General) lacked actual or apparent authority to

-12-

enter into the stipulation and judgment. See id. at 647, 649 (arguing that "State Lands officials never manifested an intent to permit lead counsel to [enter into the stipulation]" and that "there is no evidence that State Lands Officials did anything to cause defendants or their counsel to think the State lead counsel had authority to sign the 4481 Stipulation"). Utah further argued that the stipulation and order were manifestly unjust, interfered with the public trust, and intruded on the court's province.

The district court denied Utah's request to set aside the 4,481 Stipulation. However, it granted Utah's motion to set aside the resulting judgment. The distinction was based upon the court's view of the limited effect of the Stipulation on the one hand, and, in contrast, the sweeping and final effect of the resulting judgment.

As to the 4481 Stipulation, the court explained, its language "does not preclude the State from putting on evidence to counter [it]. It also does not preclude the landowners from putting on further evidence to support the 4481 level if they have such evidence." Aplt's App. vol. III, at 800. In contrast, there were good grounds for vacating the judgment quieting title in the Clingers. "Such a judgment, the court reasoned, " requires the consent of the client," which was lacking here. Id. at 805. "The State's prior counsel did not have the authority to enter into the Stipulation and Judgment with the Clingers without the approval of State land officials." Id.

Further, the court said, "[it] [did] not find any prejudice in returning the Clingers to the position of the other remaining landowners who must complete the process of determining the correct boundary of their respective properties." Id. Additionally, "to the extent that the Clinger stipulation and judgment relied on the 4481 Stipulation, it relied on an improper construction of the language of the 4481 Stipulation." Id.

E.  Utah's Second  Summary Judgment Motion

Utah then filed a motion for partial summary judgment against twelve landowner defendants in the Powell Slough, including the Clingers.  Utah argued that the Clingers' predecessors did not obtain patents to lake-abutting parcels, but instead only obtained patents to property separated from the lake by land owned by the United States.  These government lands, Utah said, were surveyed, platted, and then offered for sale in 1875, before the upland patent was issued to James Clinger in 1881.  Moreover, James Clinger's patent was for a parcel above the 1856 meander line.  Accordingly, the Clingers' parcel was separated from the lake by the land owned by the United States.

In response, the Clingers filed a cross-motion for partial summary judgment. They sought a declaration that Utah had no interest in the land between the 1856 and 1874 meander lines.  They "dispute[d] [Utah's] claims to land lying between the 1874 meander line and the stipulated 4481 level, which has been occupied, used and possessed by the Clingers since at least 1878."  Aplt's App. vol. III, at

929.  They also argued that Utah lacked standing because it had admitted in its motion for partial summary judgment that it had no claim to the land between the meander lines.

As to standing, the district court agreed with Utah.  It reasoned that because part of the sovereign lakebed lands may have been above the lower meander line, Utah could pursue its claim that the Clingers did not have title to lake-abutting land.

On the merits, the court also agreed with Utah.  "Because the government re-surveyed the area and created the 1875 Plat including additional parcels within the 1875 lands, it is clear that the government did not intend a patent issued after 1875 using the 1856 meander line as a boundary to convey land to the water's edge."  Id. at 1073.  Thus, when it issued the patent to James Clinger in 1881, the United States "would not have regarded the 1856 meander line as the lakeside meander line because the 1875 meander line created parcels between the 1875 meander line and the 1856 meander line."  Aplt's App. vol. III, at 1068-69.  As a result, "only the United States' un-patented lands are subject to the State's claim to sovereign lake-bed lands as measured by the ultimate statehood use and possession test."  Id. at 1073.

The court rejected the Clingers' argument that an 1887 deed gave them title to lake-abutting land.  That deed purported to convey to their predecessors in interest "the tract of land adjoining the above described tract on the west and

-15-

extending to Utah Lake." Id. at 1069. Despite that language, "a grantor of real property may not convey more than he owns." Id. (citation omitted). Thus, "[t]he existence of an over-reaching deed in the Clingers' chain of title cannot form the basis of a claim to unpatented federal land." Id.

Accordingly, the court held that as a matter of law "the Clingers do not have title to lake-abutting land because the United States owned parcels between the Clingers' patented parcel and the Lake at the time the patent was conveyed." Id. at 1072-73. The court entered a final judgment resolving the respective interests of Utah and the Clingers. The judgment stated that

> [t]itle is quieted in the State of Utah as against the Clinger F[am]ily Partnership to all lands located below (to the west or lakeward of) the former [1856] meander line (which is also the line separating Lots 2 and 5 of Section 29 of Township 6 South, Range 2 East, SLM) in the vicinity of Utah County Tax Parcel No. 19:034:0051. It is adjudged that Clinger possesses no right, title or interest as against the State of Utah to any portion of Lots 4 and 5, the SE1/4 NW1/4, or the SW1/4 NE1/4 of Section 29, Township 6 South, Range 2 East, SLM, or any acreage lying lakeward of those lands.

Id. at 1106. The court dismissed all of the Clingers' causes of action against Utah with prejudice.

## II. DISCUSSION

In this appeal, the Clingers do not directly challenge the district court's conclusion that they do not own lake-abutting property. Instead, they assert that (a) Utah lacked standing to assert its claims against them; (b) the district court

abused its discretion in vacating the November 20, 2002, judgment quieting title in the Clingers down to an elevation of 4,481 feet above sea level; (c) the district court erred in ruling on the Clingers' lack of title to the disputed property because that issue was never pled in the litigation; and (d) the district court erred in quieting title against them in light of the Color of Title Act, 43 U.S.C. § 1068. We consider each argument in turn.

### A. Utah's Standing

The Clingers first contend that Utah lacks standing to litigate the ownership of property above the lower meander line (established in 1874) and that, as a result, the district court erred in granting Utah's second motion for summary judgment and entering the final judgment quieting title against them. In support of their argument, the Clingers invoke alleged concessions made by Utah, statements in prior district court rulings, the Supreme Court's observations in Utah Division of State Lands, 482 U.S. at 205, and a Utah statute regarding the public use of state lands. They also argue that Utah has improperly sought to assert claims on behalf of the United States and that the interests of a third party are insufficient to establish standing.

We consider these contentions de novo. See Brereton v. Bountiful City Corp., 434 F.3d 1213, 1216 (10th Cir. 2006). They are based upon Article III of the Constitution, which grants federal courts jurisdiction over cases and controversies. U.S. CONST. ART. III, § 2, cl. 1. "Without a live, concrete

-17-

controversy," a federal court lacks jurisdiction to consider the parties' claims. Mink v. Suthers, 482 F.3d 1244, 1253 (10th Cir. 2007).

Standing is a component of the case or controversy requirement. Habecker v. Town of Estes Park, Colo., 518 F.3d 1217, 1223 (10th Cir. 2008). The requirement that a party have standing "serves to ensure that the plaintiff is a proper party to invoke judicial resolution of the dispute." Id. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)). To demonstrate Article III standing, a plaintiff must establish (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The injury must involve a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. Importantly, "[s]tates are not normal litigants for the purposes of federal jurisdiction" and are "entitled to special solicitude in our standing analysis." Massachusetts v. E.P.A., 127 S. Ct. 1438, 1454-55 (2007).

Although Article III standing is a question of federal law, state law may create the asserted legal interest. Swanson v. Bixler, 750 F.2d 810, 813-14 (10th Cir. 1984) (analyzing state law in a diversity case to determine whether the plaintiff had standing); see also Cantrell v. City of Long Beach, 241 F.3d 674, 684 (9th Cir. 2001) ("[S]tate law can create interests that support standing in federal courts."). Here, Utah's quiet title claim against the Clingers arises under

-18-

Utah law.  "[A] quiet title action, as its name connotes, is one to quiet an existing title against an adverse or hostile claim of another. . . .  One seeking such equitable relief must allege title, entitlement to possession, and that the estate or interest claimed by others is adverse or hostile to the alleged claims of title or interest."  Utah Dep't of Soc. Servs. v. Santiago, 590 P.2d 335, 337-38 (Utah 1979).

Applying these standards, we agree with the district court's analysis. Contrary to the Clingers' contention, Utah asserted a right to lands above the lower (1874) meander line in the Powell Slough throughout the district court proceedings.  Although its initial contention was that its sovereign lakebed lands extended all the way to the upper (1856) meander line, Utah did not abandon its claim to lands above the lower meander line after its more ambitious, upper meander line argument proved unsuccessful.  For example, in a memorandum in support of its second motion for summary judgment, Utah stated that "[p]arcels surveyed below the upper meander line remain unpatented to this day (part or all of which un-patented federal surveyed lands are subject to Utah's eventual sovereign lake-bed claim").  Aplt's App. vol. II, at 825 (emphasis added).  That language indicates that Utah continued to assert an interest in land between the two meander lines.

Importantly, the Clingers also asserted an interest in land between the two meander lines.  They explained in their memorandum in support of their motion

for partial summary judgment and in opposition to Utah's motion that they "indeed claim[] lands, including but not limited to the Powell Slough area between the 1856 and 1874 meander lines." Id. vol. III, at 929. These competing claims to the land between the meander lines are sufficient to establish standing. See Santiago, 590 P.2d at 337.

Additionally, we are not persuaded by the Clingers' contention that the district court ruled that Utah lacked an interest in the land between the meander lines. The ruling invoked by the Clingers (the December 2001 decision adopting the historic use and possession analysis of the Provo City cases) did not concern the Powell Slough. That ruling did not foreclose the claim at issue here–that the ordinary high water mark at statehood was above the 1874 meander line in the Powell Slough.

The other authorities invoked by the Clingers in support of their standing argument are similarly unpersuasive. Contrary to their argument, the Supreme Court's opinion in Utah Division of State Lands, 482 U.S. 193, does not "bar[] [Utah] from any claim to the title for the lands above the 1874 meander line." Aplt's Br. at 17. The Court's decision describes the location of the property designated for sale by the federal government. It does not purport to define the boundary between Utah's lands and the Clingers' land. Indeed, the Court expressly stated that it was not establishing such a boundary. It explained that "[o]ur point is not that the meander line was a 'boundary' between the lands under the navigable waters and the adjacent lands granted by the Federal Government to

-20-

private citizens, nor that this line settled the property rights of those who occupied exposed land within the meander line when Utah Lake receded." Utah Division of State Lands, 482 U.S. at 206 n.*  The Court added that "[t]he resolution of these issues is complex, depending in large measure on the facts of the specific survey[,]" and it therefore expressed no opinion on those issues. Id.

Similarly, the public use statute invoked by the Clingers, Utah Code Ann. § 23-21-4(1), does not undermine Utah's standing. The statute "reserve[s] to the public the right of access to all lands owned by the state, including those lands lying below the official government meander line or high water line of navigable waters, for the purpose of hunting, trapping, or fishing." Id.  However, it does not identify a particular boundary between Utah's lakebed lands and the adjoining property.

Finally, we agree with the district court that the fact that Utah has admitted that the United States holds property between the meander lines does not mean that Utah lacks standing to pursue its quiet claim against the Clingers. The United States' acknowledged interest in the unpatented land between the meander lines does not establish that it is the only party that has an interest there. As the district court reasoned, "[a]lthough the United States may have been the owner of unpatented lands between the two meander lines, that does not automatically make it the owner to sovereign lake-bed lands if such lands are eventually determined to be above the lowest meander line at the time of statehood." Aplts App. vol. III, at l072.

Here, Utah sought a determination that the United States, not the Clingers, was the owner of the property that adjoined the lake and was therefore the proper party with which to litigate the boundary issue. Despite the United States' interest, the adverse interests asserted by Utah and the Clingers to the property between the meander lines are sufficient to establish Utah's standing.

### B. Order Granting Utah's Rule 60(b) Motion

Next, the Clingers challenge the district court's decision granting in part Utah's motion to set aside the 4,481 Stipulation and the resulting judgment quieting title in the Clingers. Utah filed that motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. As we have noted, the district court granted that motion in part. The court refused to vacate the 4481 Stipulation, but it did vacate the resulting judgment.

Rule 60(b)(1) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party in only two instances: (1) when "a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) whe[n] the judge has made a substantive mistake of law or fact in the final judgment or order." Cashner v. Freedom Stores, Inc., 98 F.3d 572, 576 (10th Cir. 1996). We review the district court's decision to grant, in part, Utah's Rule 60(b) motion for an abuse of discretion. Plotner v. AT& T Corp., 224 F.3d

-22-

1161, 1174 (10th Cir. 2000). As a result, "we will reverse the district court's determination only if we find a complete absence of a reasonable basis and are certain that the district court's decision is wrong." Id. (internal quotation marks omitted).

Here, the district court provided two grounds for its grant of Utah's Rule 60(b) motion. First, it concluded that Utah's former counsel, an Assistant Attorney General, lacked both actual and apparent authority to enter into the stipulated order, even though (in the court's view), the Assistant Attorney General did have both actual and apparent authority to enter into the 4,481 Stipulation. Second, the court concluded that "to the extent that the . . . judgment relied on the 4481 Stipulation, it relied on an improper construction of the language of the 4481 Stipulation." Aplt's App. vol. III, at 805.

The Clingers now challenge the first of the district court's grounds. They contend that a card laid is a card played: in their view, the Assistant Attorney General's actual and apparent authority extended to the decision to consent to the judgment. There is considerable support for their argument.

In particular, Utah was represented in this litigation by an Assistant Attorney General. "In addition to constitutional and statutory authority, the Utah Attorney General, like attorneys general of numerous other states, has common law powers. . . . The source of the common law power lies in the State's statutory adoption of the common law which has been in effect, except as modified by

-23-

statute, since statehood." Hansen v. Utah State Ret. Bd., 652 P.2d 1332, 1337 (Utah 1982).

Although the Utah Supreme Court does not appear to have resolved the question, a number of other courts have concluded that a state Attorney General's common law powers include the power to settle litigation in which the state is a party. See, e.g., State ex rel. Derryberry v. Kerr-McGee Corp., 516 P.2d 813, 818 (Okla. 1973) ("We conclude, as did the Kansas [Supreme] [C]ourt . . . , that the Attorney General's powers are as broad as the common law unless restricted or modified by statute, and that his authority to dismiss, settle or compromise the litigation in question, in the absence of fraud or collusion, is undisputed."); State ex rel. Carmichael v. Jones, 41 So. 2d 280, 284 (Ala. 1949) (stating that "pretermitting any question of bad faith, which is not here raised, it is our conclusion that the attorney general, as the chief law officer of the state, was fully empowered to make any bona fide disposition of the cause as in his judgment might be deemed to be to the best interest of the state, unless inhibited by organic law").

Here, in vacating the judgment quieting title in the Clingers, the district court stated that "[t]his type of stipulation [i.e., a stipulation to a dispositive decision] requires the consent of the client." Id. at 805. Although, as Utah observes in its appellate brief, there is ample authority to support that proposition when a party is represented by private counsel, see, e.g., State v. Musselman, 667

-24-

P.2d 1061, 1068 n.8 (Utah 1983) (stating that "in civil cases, it is for the client to decide whether he will accept a settlement offer" (quoting ABA MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC 7-7 (1981)), the district court did not address the fact that, in this case, Utah was represented by an Assistant Attorney General.

Nevertheless, we need not here determine whether the common law powers of the Utah Attorney General, read in conjunction with the state statutes regarding the office, authorized Utah's former counsel to agree to the stipulated judgment. Even assuming that Utah's former counsel had such authority, the district court provided an independent ground for vacating the judgment–that the judgment "relied on an improper construction of the language of the 4481 stipulation." Aplt's App. vol. III, at 805. The Clingers have neither challenged that holding on appeal, nor have they questioned the timeliness of Utah's Rule 60(b) motion. See Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1088 (10th Cir. 2005) (observing that "a Rule 60(b)(1) motion 'shall be made within a reasonable time,' but never 'more than one year after the judgment, order or proceeding was entered or taken'" and that this time limit is "absolute") (quoting FED. R. CIV. P. 60(b)(1)). Therefore, the Clingers have waived any objection to the district court's ruling on this ground. See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (noting that failure to raise issue on appeal in the opening brief is a waiver of that issue).

Morever, the district court's conclusion that the 4,481 Stipulation did not necessarily require the entry of judgment in favor of the Clingers is a plausible one. The Stipulation merely stated that "from the time of the original federal patent under which their predecessors-in-interest claim title, they and their predecessors-in-interest have used that land lakeward from the federally surveyed meander line to an elevation no higher than 4481 feet above sea level." Aplt's App. vol. II, at 665. It further stated that the defendant landowners need put on no further evidence to support their claim that their use of the land established the ordinary high water mark at that level. As the district court reasoned, the 4,481 Stipulation did "not set the ultimate boundary." Aplt's App. vol, III, at 803. It did not address the Clingers' land in particular, and it did not purport to resolve the question resolved by the district court here–whether there was federal land in between Utah's lakebed lands and the Clingers' property. Thus, the district court did not abuse its discretion in concluding that the Stipulation did not foreclose the arguments that Utah subsequently advanced against the Clingers in its second summary judgment motion.

## C. Ruling on Issues Allegedly Not Pleaded

The Clingers further contend that the district court erred "in allowing [Utah] to advance, after five years of litigation, the theory of the Clinger[s'] lack of title as a basis for quieting title." Aplt's Br. at 35. They maintain that they were unfairly surprised by Utah's assertion of a new ground for relief. The Clingers

-26-

also seek to characterize certain statements in the district court's rulings as the law of the case. In their view, these statements by the district court indicated that the sole issue remaining between Utah and the Clingers was the boundary of the land that the Clingers' predecessors possessed. Thus, they maintain, by allowing Utah to pursue its theory that it was the United States, rather than the Clingers, that owned land in the Powell Slough that adjoined the lakebed, and then adopting that theory, the district court improperly ruled on an issue that was never pled.

Upon de novo review, see Butler v. Compton, 482 F.3d 1277, 1278 (10th Cir. 2007), we conclude that the Clingers' arguments are not supported by the record. In both its Complaint and its Amended Complaint, Utah asserted that "the 1856 survey notes and the location of the meander line fixed by the government surveys [are] the best documentary evidence of the ordinary high water mark" at the time of statehood. Aplt's App. vol. I at 106, 192. Utah's Amended Complaint alleged that the defendants (including the Clingers) each "may claim a portion of the Lakebed lying below the Meander Line which may conflict with the claims of the State to sovereign land comprising the Lakebed." Id. at 199. Utah requested the court to quiet title up to the asserted boundary. In their answer and counterclaim, the Clingers contended that they were entitled to "the use and possession of all of [their] lands lying between the Meander Line and the water's edge." Id. at 266.

These competing claims were sufficient to put the Clingers on notice that title to the land between the meander lines was in dispute in the litigation. The fact that the district court rejected Utah's contention that the 1856 meander line constituted the ordinary high water mark at statehood does not mean that the Clingers did not know of the interests at stake: they were still on notice that Utah was asserting title to the same land that they were.

Additionally, we are not persuaded by the Clingers' contention that the district court's rulings established, as the law of the case, that Utah could not assert that the United States, rather than the Clingers, owned the land adjoining the lake in the Powell Slough. The district court's September 2001 decision did state that "title should be and is quieted in the Defendants in possession of the land." Aplt's App. vol. I, at 355. However, in ruling on Utah's motion to reconsider that decision, the court explained that each of the private landowners "will need to establish their title, usage, and possession of their land in order for boundaries to be set." Aplt's App. vol. II, at 565 (emphasis added). Moreover, although the district court did deny Utah's motion to file another amended complaint based on "omitted lands" or "Basart doctrines," see id. at 596, that decision did not preclude Utah from continuing to assert its claims to the disputed land based upon other theories.[2]

---

[2] The district court explained that the "omitted lands" theory was based upon an alleged error in the surveys. Aplt's App. vol. II, at 600. The other new theory, the Basart doctrine, "theorizes that between the time of the meander survey of

(continued...)

Most importantly, the Clingers have failed to explain how they were prejudiced by the district court's consideration of Utah's argument in its second summary judgment motion. There, as we have noted, Utah persuasively argued that the existence of federal land between the lakebed and the Clingers' land barred the Clingers' claim to land adjoining the lake. The Clingers had the opportunity to contest Utah's arguments in support of its second summary judgment motion, and there is no indication in this record that the district court's management of the case precluded them in any way from raising legal or factual arguments in response to Utah's contentions.

---

[2](...continued)
1856 and the issuance of patents substantial accretions had formed adjacent to the patents." Id. at 601.

## D. Color of Title Act

Finally, the Clingers contend that the district court erred in quieting title against them in light of a provision of the Color of Title Act, 43 U.S.C. § 1068. Section 1068 states that "no patent shall issue under the provisions of this chapter . . . for any tract to which there is a conflicting claim adverse to that of the applicant, unless and until such claim shall have been finally adjudicated in favor of such applicant." The Clingers maintain that "[by] law, [they] could not obtain a patent for their property until the dispute with the State over the lakebed was adjudicated in favor of Clinger." Aplt's Br. at 40. This cursory argument is not persuasive.

The Color of Title Act provides that the Secretary of the Interior shall "issue a patent for not to exceed one hundred and sixty acres of such land upon the payment of not less than $1.25 per acre" if "it shall be shown to his satisfaction that a tract of public land has been held in good faith and in peaceful, adverse, possession by a claimant, his ancestors or grantors, under claim or color of title for more than twenty years, and that valuable improvements have been placed on such land or some part thereof has been reduced to cultivation." 43 U.S.C. § 1068(a). Additionally, the Secretary may issue such a patent if "it shall be shown to his satisfaction that a tract of public land has been held in good faith and in peaceful, adverse, possession by a claimant, his ancestors or grantors, under claim or color of title for the period commencing not later than January 1, 1901, to the date of

-30-

application during which time they have paid taxes levied on the land by State and local governmental units." Id. § 1068(b).

The fact that the Clingers could not obtain a patent under the Color of Title Act while this litigation was pending does not establish that the district court erred. The district court concluded that the Clingers' property did not adjoin the lakebed. However, it did not purport to resolve any disputes between the federal government and the Clingers regarding the boundaries of their respective parcels. Thus, the Clingers' potential Color of Title Act claim against the federal government does not affect the district court's resolution of the dispute before us now.

### III. CONCLUSION

We therefore AFFIRM the district court's judgment quieting title in favor of Utah and against the Clingers.[3]

---

[3] In light of our disposition of this case, we deny Utah's motion to supplement the appendix as moot.



TOWNSHIP Nº6 SOUTH, RANGE Nº2 EAST, OF THE SALT LAKE MERIDIAN, UTAH.
DEPENDENT RESURVEY OF PORTION OF SUBDIVISIONS AND
MEANDERS IN SECTIONS 18, 19, 20, AND 29
Scale: 20 Chains to 1 Inch.

999

ORIGINAL
TWO SHEETS
SHEET Nº 2